J-S14021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SPENCER LONG | : | |
| | : | |
| Appellant | : | No. 1580 EDA 2024 |

Appeal from the PCRA Order Entered May 9, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001874-2016

BEFORE: DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:           **FILED JULY 15, 2025**

Spencer Long ("Long") appeals from the order entered by the Philadelphia County of Common Pleas dismissing without a hearing his first petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] Long raises four claims that his trial and appellate counsel rendered ineffective assistance. Because he failed to prove and plead any of his claims, we affirm.

On December 18, 2015, Marquis McClain ("McClain") was shot in the buttocks while he was driving a car in North Philadelphia. Police discovered that Long was the shooter through a variety of sources. A woman who had relationships with McClain and Long, Aaliya Porterfield ("Porterfield"), told

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

police that McClain had called her on the day of the shooting while she was with Long. Phone records obtained by police revealed multiple contacts between Porterfield and McClain, McClain and Long, and Porterfield and Long on the day of the shooting. Terrence Jackson ("Jackson"), a passenger in McClain's car during the shooting, told Detective Michael Repici that McClain had been arguing on the phone with someone known as "Little Spence" shortly before the shooting. Tim Szerlik ("Szerlik"), who reported to 911 that he had witnessed the shooting while working construction nearby, identified Long from a photo array. Edward Dixon ("Dixon"), McClain's mother's longtime partner, spoke to McClain before the shooting outside a nearby autobody shop and subsequently heard gunshots after he saw McClain's car drive in the direction of the shooting. Ten to fifteen minutes later, McClain called Dixon and told him to call his mom, and five minutes after that, McClain called Dixon again and told him that Long had shot him.

Police arrested Long on December 31, 2015. Arresting officers recovered two cell phones during a search incident to the arrest: one Apple iPhone and one black LTE phone. Without reading Long his **Miranda** rights,[2] Detective Repici asked Long if the phones were his and what his phone numbers were. Long responded that both phones were his. He provided the

_____

[2] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

number for the LTE phone and explained that he used the iPhone to play music only.

On the same day that police arrested Long, Detective Repici applied for a search warrant using the phone number Long had provided. Call records from Metro PCS revealed numerous phone calls between McClain and Long on the day of the shooting. After Detective Repici obtained a second warrant for Long's phone number, the District Attorney's Office obtained the data from the LTE phone, including photographs, calls, text messages, and videos. Detective Repici also applied for and obtained a search warrant for Porterfield's cell phone.

Prior to trial, trial counsel moved to suppress a variety of evidence on several grounds. Relevant to the instant petition, although the trial court determined that Detective Repici "unlawfully obtained" Long's cell phone number when the detective questioned him without providing **Miranda** warnings, the court concluded that it need not suppress any evidence derived from the unlawful interrogation because the police inevitably would have discovered Long's phone number based on their independent investigation. **Commonwealth v. Long**, 242 A.3d 458, at *3, *8 n.14 (Pa. Super. filed Nov. 30, 2020) (non-precedential decision).

Following trial in April 2017, a jury convicted Long of attempted murder, aggravated assault, recklessly endangering another person, and two firearm

violations.[3]  The trial court determined that Long was incompetent to participate in his sentencing and deferred sentencing until Long's competency was restored.  On June 18, 2018, the trial court sentenced Long to a term of ten to twenty years in prison for attempted murder, entered a determination of guilt without further penalty for the other convictions, and directed Long to receive mental health treatment.

This Court affirmed Long's judgment of sentence on direct appeal. *Long*, 242 A.3d 458.  Our Supreme Court denied Long's petition for allowance of appeal on June 8, 2021.  *Commonwealth v. Long*, 256 A.3d 427 (Pa. 2021).  Long did not pursue a writ of certiorari in the United States Supreme Court.

On August 17, 2021, Long filed a timely pro se PCRA petition.  Long's initial court-appointed counsel filed a motion to withdraw pursuant to *Turner/Finley*.[4]  The PCRA court dismissed Long's petition without a hearing and permitted Long's appointed PCRA counsel to withdraw.  The PCRA court appointed new counsel, Attorney David W. Barrish, who filed an appeal on Long's behalf.  Because original PCRA counsel failed to abide by *Turner/Finley*'s requirements, this Court vacated the order dismissing Long's pro se petition and remanded to permit Attorney Barrish to file an

---

[3] 18 Pa.C.S. §§ 901(a), 2502, 2701(a)(1), 2705, 6106(a)(1), 6108.

[4] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

amended petition or no-merit letter. ***Commonwealth v. Long***, 293 A.3d 596, *4 (Pa. Super. 2023) (non-precedential decision).

On remand, Attorney Barrish filed an amended petition on Long's behalf with claims that Attorneys Ramsey Younis ("Trial Counsel") and Aaron Marcus ("Direct Appeal Counsel") had provided ineffective assistance to Long at trial and on direct appeal, respectively. After providing notice of its intent to dismiss the petition pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure, the PCRA court dismissed the petition on May 9, 2024.

This timely appeal followed. Both the PCRA court and Long complied with the mandates of Rule 1925 of the Pennsylvania Rules of Appellate Procedure.

Long presents four issues challenging the PCRA court's dismissal of his ineffective-assistance-of-counsel claims, which we summarize and reorder for ease of disposition. ***See*** Long's Brief at 4-5. Long contends that Direct Appeal Counsel rendered ineffective assistance on direct appeal by (1) failing to present an issue that the trial court erred by denying his motion to suppress evidence obtained as the fruit of a ***Miranda*** violation; (2) inadequately presenting an issue concerning the trial court's erroneous decision to permit Dixon to testify, over Long's hearsay objection, that McClain told Dixon that Long shot him; and (3) failing to present a discretionary aspect of sentencing claim. ***See id.*** Long's fourth issue pertains to the stewardship of Trial Counsel, claiming that counsel's motion to suppress neglected to argue that

certain text messages and photographs introduced at trial were outside the scope of the search warrant. ***See id.***

We bear in mind the following standard when conducting our review of these claims:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion.

***Commonwealth v. Wilson***, 273 A.3d 13, 18 (Pa. Super. 2022) (citations omitted).

To obtain PCRA relief, the petitioner must establish, by a preponderance of the evidence, that the conviction or sentence resulted from one or more of the enumerated errors set forth in 42 Pa.C.S. § 9543(a)(2). One such error is the ineffective assistance of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Id.*** § 9543(a)(2)(ii). A petitioner must also show the claim has not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial, ... or on direct appeal could not have been the result of any rational, strategic[,] or tactical decision by counsel." 42 Pa.C.S. § 9543(a)(3), (a)(4).

When reviewing a claim that counsel rendered ineffective assistance, "we begin, as we must, with the presumption that counsel acted effectively." *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023). To overcome this presumption, a petitioner must establish that: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice because of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different absent the error." *Id.* A petitioner's failure to establish any one of these three prongs results in failure of the claim. *Commonwealth v. Rizor*, 304 A.3d 1034, 1050-51 (Pa. 2023).

### Evidence Obtained as Fruit of the Poisonous Tree

In his first issue, Long argues that because Detective Repici obtained his phone number during a custodial interrogation without the requisite *Miranda* warnings in violation of the Fifth Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution.[5] He contends that the detective relied upon this information to obtain the search warrants, such that the derivative evidence (all phone records, text messages,

_____

[5] This underlying premise of Long's first issue is not in dispute. *See* Long's Brief at 28-29; *Long*, 242 A.3d at 458 n.14 (noting the trial court's pretrial determination that "Detective Repici unlawfully obtained [Long's cellphone] number when the detective questioned him without first reading the *Miranda* rights"); Commonwealth's Brief at 17 n.7 (acknowledging that the prosecutor conceded the *Miranda* violation before the trial court).

photographs, and call data) obtained as a result was fruit of the poisonous tree. In his view, the trial court erred by not suppressing this evidence, and Direct Appeal Counsel rendered ineffective assistance by recognizing and then abandoning the issue on direct appeal.[6] Long's Brief at 28-29 (citing N.T., 1/19/2017, at 16).

"While claims of trial court error may support the arguable merit element of an ineffectiveness claim, a petitioner must meaningfully discuss each of the three prongs of the ineffectiveness claim to prove he is entitled to relief." **Commonwealth v. King**, 259 A.3d 511, 521 (Pa. Super. 2021). Further, when examining reasonable basis, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather,

_____

[6] Although the PCRA court maintained that this Court had already ruled upon the merits of the underlying fruit-of-the-poisonous-tree claim on direct appeal, PCRA Court Opinion, 8/8/2024, at 8-9, our review of this Court's decision in Long's direct appeal indicates otherwise. This Court observed that Direct Appeal Counsel's concise statement of matters complained of on appeal "included a claim that all data from Long's phone should have been suppressed 'because the search was the fruit of a non-[M]irandized custodial interrogation and an involuntary statement[.]'" **Long**, 242 A.3d 458 at *8 (citation omitted). In the brief, however, Direct Appeal Counsel's argument that the trial court erred by applying the doctrine of inevitable discovery was limited to an attack on the end result of the trial court's analysis on a ground that this Court had rejected elsewhere in the decision (the particularity of the warrant itself), without presenting a **Miranda** claim attacking the underlying premise that the inevitable discovery doctrine should apply in the first place. **See id.** Thus, this Court concluded that the "trial court's analysis concerning the doctrine of inevitable discovery on this basis is not relevant to the instant appeal." **Id.** This is of no moment, though, as this Court is not bound by the rationale of the PCRA court and may affirm on any basis supported by the record. **See Commonwealth v. Doty**, 48 A.3d 451, 456 (Pa. Super. 2012).

we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018) (citation omitted). "We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative 'offered a potential for success substantially greater than the course actually pursued.'" *Id.* (citation omitted). "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1044 (Pa. Super. 2019).

Long's amended PCRA petition merely asserted, without explanation, that it was "inconceivable" that Direct Appeal Counsel's decision to forgo briefing the fruit-of-the-poisonous-tree issue could have been strategic or tactical. Amended PCRA Petition, 9/8/2023, at 27. In Long's brief filed on direct appeal, Direct Appeal Counsel explained that he decided to forgo briefing this issue because a plurality of the United States Supreme Court had decided that a Fifth Amendment violation "does not require suppression of physical evidence derived from an unwarned but voluntary statement" and because trial counsel did not present an argument to the trial court that the analysis under Article I, Section 9 should deviate from the federal jurisprudence. *See* Long's Brief, 3085 EDA 2018, 3/31/2020, at 4 n.1 (citing *United States v. Patane*, 542 U.S. 630 (2004) (plurality); *Commonwealth v. Bishop*, 217 A.3d 833 (Pa. 2019)). Counsel's assessment of the law was

accurate. *See Bishop*, 217 A.3d at 835–36 (noting that the Fifth Amendment, as construed by *Patane*, does not require suppression of physical evidence recovered as the result of defendant's statement made during a custodial interrogation without appraisal of the required *Miranda* warnings; Pennsylvania state law had not recognized a deviation from federal law; and, to the extent that a defendant argued that it should, the defendant must preserve this argument for appeal by presenting it to the trial court in the first instance). The argument advanced by Long does not address counsel's explanation; instead, he simply regurgitates the general law without demonstrating that this foregone issue offered a substantially greater potential for success. *See Brown*, 196 A.3d at 150. Given the procedural posture of the case and the state of the law, it was reasonable for counsel to exercise professional judgment to forgo this issue in favor of other appellate issues. *See Commonwealth v. Showers*, 782 A.2d 1010, 1016 (Pa. Super. 2001) (holding that appellate counsel may exercise professional judgment by winnowing issues for appeal). No relief is due on Long's first issue.

**Dixon's Testimony Regarding McClain's Statement**

Long's second issue asserts that Direct Appeal Counsel rendered ineffective assistance by inadequately presenting an issue concerning the trial court's erroneous decision to permit Dixon to testify, over Long's hearsay objection, that McClain told Dixon that Long shot him. Long's Brief at 31-34. Specifically, Long points to Direct Appeal Counsel's failure to ensure that the

transcript of Dixon's trial testimony was part of the certified record on direct appeal, which interfered with this Court's ability to conduct a full evaluation of the claim. Long's Brief at 32-33; *see also Long*, 242 A.3d 458, at *9.

Long fails to establish the arguable merit of this issue. He does not address the trial court's conclusion that Dixon's statement satisfied the excited utterance exception to the hearsay rule. In fact, the entire substance of his argument consists of a conclusory assertion that McClain's statement to Dixon that Long shot him "certainly was an out of court statement that did not satisfy any of the hearsay exceptions in the Pennsylvania Rules of Evidence nor the decisional law of the Commonwealth of Pennsylvania." Long's Brief at 33.

Moreover, Long offers no explanation as to reasonable probability the result of the proceeding would have been different had this Court had access to the transcripts on direct appeal. To the contrary, based upon the consensus between the parties and the trial court as to the substance of the statements and the trial's court's analysis, we concluded that

> even if Long had supplied us with a complete record and established that the trial court improperly admitted the challenged testimony, any such error would be harmless. The record reveals significant evidence to support Long's convictions, including, inter alia, cell phone records and a witness identification. Thus, any prejudice resulting from the admission of Dixon's statement was de minimis, and unlikely to have contributed to the verdict.

*Long*, 242 A.3d 458, at *10. Because the Commonwealth already satisfied the "lesser standard" of prejudice for purposes of harmless error, Long cannot use the same error to demonstrate the "more exacting 'actual prejudice' test"

for purposes of the PCRA. *See Commonwealth v. Spotz*, 84 A.3d 294, 315 (Pa. 2014). Put another way, Long cannot use the erroneous admission of evidence that this Court has already deemed to be harmless on direct appeal to demonstrate that there is a reasonable probability that, but for Direct Appeal Counsel's failure to preserve a hearsay challenge, the result of the trial would have been different. No relief is due on Long's second issue.

**Discretionary Aspects of Sentencing**

Long's third issue pertaining to Direct Appeal Counsel assails his failure to present a discretionary aspect of sentencing claim on direct appeal. Long contends that because he has suffered from lifelong mental health problems and is in need of mental health treatment to treat his diagnosed conditions of schizophrenia and/or schizoaffective disorder, the sentence imposed was manifestly excessive, punished him too severely, and did not meet his rehabilitative needs. *See* Long's Brief at 37-43. Although he received a standard sentence within the guidelines, he argues, without elaboration, that applying the guidelines to him was clearly unreasonable. *Id.*

The PCRA court explained that it dismissed Long's claim without a hearing because it lacked merit and he failed to establish prejudice. PCRA Court Opinion, 8/8/2024, at 9-10. The court noted that it imposed a standard range sentence for attempted murder and took his mental health into account when ordering that he receive mental health treatment while he was incarcerated. *Id.*

A claim implicating the discretionary aspects of sentencing raised in the context of an ineffectiveness claim is cognizable under the PCRA. **Commonwealth v. Sarvey**, 199 A.3d 436, 455 (Pa. Super. 2018). "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." **Commonwealth v. Watson**, 228 A.3d 928, 936–37 (Pa. Super. 2020). This Court "cannot re-weigh the sentencing factors and impose our judgment in place of the sentencing court" on appeal. **Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa. Super. 2009). Pursuant to 42 Pa.C.S. § 9781(c)(2), this Court may only vacate a sentence within the guidelines if the "the case involves circumstances where the application of the guidelines would clearly be unreasonable." **Id.** at 456.

Long fails to discuss the reasonable basis prong and to demonstrate how he would establish that Direct Appeal Counsel lacked a reasonable basis for choosing not to pursue this issue on direct appeal. He also fails to establish that the claim has arguable merit or that he was prejudiced by Direct Appeal Counsel's course of action. Even if Direct Appeal Counsel had successfully invoked this Court's discretion to present a challenge to the discretionary aspects of his sentence, this Court would have concluded that the sentencing court did not abuse its discretion, given that (1) the trial court forewent imposing a penalty upon Long for his convictions that did not merge with attempted murder, (2) it expressly took his mental health into account when

fashioning the sentence, and (3) Long received a standard range sentence for this crime of violence. *See, e.g., Commonwealth v. Comitz*, 530 A.2d 473, 476 n.5 (Pa. Super. 1987) (determining that counsel was not ineffective for failing to bring a meritless claim that trial court abused its discretion by imposing a sentence within the standard range upon defendant experiencing mental illness when committing the crime because the trial court has discretion to weigh defendant's mental health needs with the protection of the public). Thus, the PCRA court did not abuse its discretion in concluding that Long did not establish the merit of a claim that he would have received a different sentence but for Direct Appeal Counsel's decision to forgo presenting a discretionary aspects of sentencing claim on direct appeal.

### Text Messages/Photograph Relating to Long's Gun Purchase

Long's final claim pertains to Trial Counsel. He contends that Trial Counsel rendered ineffective assistance by failing to argue, in the original motion to suppress, that Commonwealth Exhibits 42-C and 42-D were outside the scope of the search warrant. Long's Brief at 34-37. The exhibits were text messages sent from Long's cell phone in late November 2015 relating to Long's purchase of a gun, one of which included a photograph of a gun. *See id.* at 34-35. Long maintains that Trial Counsel provided ineffective assistance by failing to present this issue at the time of the original motion to suppress.

The certified record does not support Long's conclusory assertion. By way of background, the Commonwealth sought a pretrial ruling regarding the

admission of the text messages and photograph. **See** N.T., 4/18/2017, at 7-36. Trial Counsel argued that the court should deny the request because they were sent by Long's phone in November 2015, putting them outside the date range and scope of the warrant obtained by the Commonwealth. **See id.** The trial court ruled that the information was admissible. **See id.** at 26, 35-36. Notwithstanding Trial Counsel's delay in requesting exclusion of these text messages and accompanying photograph, he did challenge their admissibility before the trial court, and this Court further considered the merits of whether the trial court erred in failing to suppress these items on direct appeal. **See Long**, 242 A.3d 458, at *7. We concluded that the record supported the trial court's determination that any error in admitting the evidence pre-dating the parameters of the warrant was harmless, because any prejudicial effect of the challenged evidence was de minimis and unlikely to have contributed to the verdict in light of the other evidence supporting Long's guilty verdict. **Id.** Because admission of this evidence constituted harmless error, Long cannot satisfy the prejudice prong of the ineffective-assistance-of-counsel test by using the same evidence. **See Spotz**, 84 A.3d at 315. Accordingly, no relief is due on Long's final issue.

**Conclusion**

Because Long did not plead and prove any of his four claims that his prior attorneys provided ineffective assistance of counsel at trial and on direct

appeal, the PCRA court did not abuse its discretion in dismissing his PCRA petition without a hearing.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2025